Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **IVYPORT LOGISTICAL SERVICES, INC.**<br><br>Apelante<br><br>v.<br><br>**AUTORIDAD DE LOS PUERTOS DE PR**<br><br>Apelados | KLAN202400716 | ***APELACIÓN***<br>procedente del<br>Tribunal de Primera<br>Instancia Sala<br>Superior de<br>**CAROLINA**<br><br>Caso Número:<br>F DP2008-0300<br>(Salón 408)<br><br>Sobre:<br>**INTERFERENCIA TORTICERA (INT. INDEBIDA)** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante nos, Ivyport Logistical Services, Inc., en adelante, Ivyport o apelante, para que revisemos una *"Sentencia"* del Tribunal de Primera Instancia, Sala de Carolina, TPI-Carolina, notificada el 23 de abril de 2024. En la misma, el Foro Primario declaró *"No Ha Lugar"* la demanda por Daños y Perjuicios de la apelante, contra la Autoridad de los Puertos de Puerto Rico, en adelante, Autoridad de Puertos o apelada.

Por los fundamentos que expondremos a continuación, *confirmamos* la sentencia apelada.

**I.**

Los hechos que emprenden la controversia que hoy nos ocupa se remontan al año 1999, cuando la Autoridad de Puertos realizó un contrato con la compañía Swissport Puerto Rico, Inc., en adelante, Swissport, con fecha de vencimiento del 29 de julio de 2002.[1] En el

---

[1] Apéndice del escrito en oposición, pág. 137.

Número Identificador

SEN2024 _____

mismo figuraba el servicio que ofrecía Swissport a las líneas aéreas en el Aeropuerto Internacional Luis Muñoz Marín, en adelante Aeropuerto LMM. Más adelante, Swissport fue adquirido en el año 2002 por Ivyport, mediante un "Share Purchase Agreement".[2] Sin embargo, es importante destacar que *el contrato entre la Autoridad de Puertos con Swissport no fue renovado por Ivyport, luego de su vencimiento.*[3]

Ahora bien, durante los años 2002 al 2008 – cuando ocurrieron los hechos particulares del caso de marras – Ivyport había acumulado un déficit operacional de $15,196,159.00.[4] No obstante, el 3 de junio de 2004, la Autoridad de Puertos estableció un *"Acuerdo de Plan de Pago"* para Ivyport, con el fin de saldar una deuda ascendente a $286,421.22.[5]

El 10 de junio de 2008, la apelada emitió una Carta Circular a los concesionarios y líneas aéreas, *entre estas Ivyport*, informándoles que el 1 de julio de 2008, la Autoridad de Puertos cancelaría las operaciones de las compañías con balances operacionales pendientes.[6] Por el alegado incumplimiento de Ivyport con el pago de su deuda con la Autoridad de Puertos, esta última consultó con sus abogados para un posible proceso de desahucio.[7] El 15 de julio de 2008, el Gerente General en el Aeropuerto LMM de la Autoridad de Puertos en aquel momento, Fred Sosa, envió un correo electrónico informando que la Asesora Legal General de la Autoridad de Puertos, la Licenciada Marla Méndez, entendía que el desahucio no aplicaba, por no existir un contrato entre las partes.[8] Además indicó que se debía revocar el acceso de los empleados de

---

[2] Apéndice del recurso, pág. 408.
[3] Apéndice del escrito en oposición, pág. 263.
[4] *Id.*, págs. 128, 187 y 545.
[5] *Id.*, pág. 410.
[6] *Id.*, pág. 178.
[7] *Id.*, págs. 401-407.
[8] *Id.,* pág. 404.

Ivyport, cancelando los permisos y tarjetas de identificación de estos.[9]

Por otro lado, el 23 de julio de 2008, la Autoridad de Puertos radicó una *"Demanda"* contra Ivyport en cobro de dinero,[10] por incumplimiento con rentas adeudadas y con el plan establecido de pago entre las partes.[11] Sin embargo, llegado el 31 de julio de ese mismo año, en horas de la noche, la Autoridad de Puertos restringió la entrada del personal de Ivyport, y notificó que incautaría las identificaciones de estos.[12] Por estos hechos, el 1 de agosto de 2008, Ivyport presentó una *"Petición de Injunction"* ante el TPI-Carolina, arguyendo que las actuaciones de la Autoridad de Puertos fue un cierre y embargo de facto de su compañía, por lo que procedía una orden para restaurar su acceso.[13] Esta petición fue concedida, y en un periodo no mayor de veinticuatro (24) horas, el acceso fue reestablecido a Ivyport.[14] El 7 de agosto de 2008 se celebró una vista en el que el Foro Apelado decidió dejar en vigor la orden de injunction provisional.[15]

Por su parte, la apelante radicó una *"Demanda"* el 14 de agosto de 2008 contra la Autoridad de Puertos, por concepto de daños y perjuicios.[16] Por ser relevante a la controversia que nos ocupa, destacamos que el 15 de marzo de 2010, Ivyport presentó un informe del Contador Público Autorizado, Joaquín Torres, en adelante, CPA Torres, en el que se evaluó la compañía, al momento del 30 de junio de 2008.[17]

---

[9] Apéndice del recurso, pág. 404.
[10] *Id.,* pág. 1207.
[11] El 30 de abril de 2012, las partes anunciaron haber llegado a un acuerdo transaccional. Sin embargo, luego de transcurrido el término ofrecido por el Foro Primario para que las partes sometieran el mismo, se archivó la demanda referida el 13 de agosto de 2012.  (Apéndice del recurso, pág. 1207).
[12] *Id.,* pág. 1223.
[13] *Id.,* pág. 3307.
[14] Apéndice del escrito en oposición, pág. 183.
[15] *Id.,* pág. 1390.
[16] *Id.,* pág. 88.
[17] *Id.,* pág. 432.

El 6 de septiembre de 2011 la demanda fue enmendada,[18] y posteriormente contestada por la apelada el 27 de septiembre de 2012.[19] Además, por ser importante al caso ante nos, destacamos que el CPA Torres suscribió un informe suplementario el 30 de abril de 2013.[20] Luego de varios eventos procesales que no guardan relevancia con la controversia que atendemos, el 23 de abril de 2018, la Autoridad de Puertos solicitó que se dictara sentencia sumaria, alegando que Ivyport nunca tuvo un contrato de arrendamiento con ella y que, por virtud de la Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de junio de 1974, un contrato con una instrumentalidad pública como esta requiere un contrato por escrito.[21]

No obstante, mediante *"Sentencia Parcial"* del 16 de octubre de 2018, el TPI-Carolina declaró la misma "No Ha Lugar".[22] Inconforme, la Autoridad de Puertos recurrió del referido dictamen ante este Tribunal, mediante un recurso de *Certiorari*, el cual fue denegado por un panel hermano el 20 de diciembre de 2019.[23] Luego de una solicitud de reconsideración denegada el 24 de enero de 2020, los apelados recurrieron al Tribunal Supremo mediante *"Apelación"*, el cual proveyó "No Ha Lugar" el 13 de marzo de 2020.[24] Posteriormente, la Autoridad de Puertos presentó dos peticiones de reconsideración, las cuales, también, fueron denegadas.[25]

Así las cosas, el 13 de octubre de 2022, las partes presentaron el "Informe sobre Conferencia con Antelación al Juicio".[26] En el

---

[18] Apéndice del escrito en oposición, pág. 1.
[19] *Id.*, pág. 12.
[20] *Id.,* pág. 555.
[21] *Id.,* págs. 151-152.
[22] *Id.,* pág. 167.
[23] *Id.,* pág. 170.
[24] *Id.,* pág. 185. AC-2020-0022.
[25] *Id.,* págs. 188 y 191.
[26] Apéndice del recurso, pág. 200.

mismo, Ivyport y la Autoridad de Puertos *estipularon* varios hechos, entre ellos, destacamos los siguientes:[27]

13. La Autoridad de Puertos, mediante Carta Circular Operacional de 10 de junio de 2008, les había advertido a todas las líneas aéreas y concesionarios que, efectivo el 1 de julio de 2008 se le cancelaria los sellos de rampa a las compañías que reflejasen balances operacionales pendientes de pago, en violación a sus obligaciones contractuales. Al no saldar el balance pendiente de pago adeudado por Ivyport el 31 de julio de 2008 se les retuvo a algunos empleados de Ivyport sus identificaciones, hasta tanto saldaran la deuda existente.

14. La Autoridad de Puertos advirtió a todos los concesionarios y líneas aéreas mediante Carta Circular Operacional del 10 de junio de 2008, que efectivo el 1 de julio de 2008 se cancelarían todos los sellos de rampa de las compañías que reflejaran balances operacionales pendientes de pago. Advertencias similares que había recibido Ivyport, conforme admisión de su presidente el Sr. Fernández.

15. Efectivo la medianoche del día 31 de julio de 2008, la Autoridad ordenó y llevó a cabo la cancelación de los accesos a los empleados y equipos de Ivyport.

16. Esta operación se tomó sin previamente solicitar la intervención de un tribunal con jurisdicción mediante un proceso de desahucio, embargo, orden interlocutoria u otro remedio que la Autoridad entendiera procedía.

17. Ivyport no tuvo pérdida, ni robo de propiedad, durante las 24 horas que le fueron retenidos los sellos de rampa y las identificaciones a algunos de sus empleados.

Luego, la Conferencia con Antelación al Juicio se celebró el 19 de octubre de 2022.[28] Finalmente, el juicio en su fondo fue celebrado los días 6, 7, 8, 9, 11 de diciembre de 2022, el 14 de febrero de 2023 y el 13 de julio de 2023.[29] El 11 de julio de 2023, cuando Ivyport dio por sometido su caso, la Autoridad de Puertos presentó una solicitud de desestimación al amparo de la Regla 39.2 (C) de

---

[27] Apéndice del recurso, pág. 220.
[28] *Id.,* pág. 271.
[29] *Id.,* págs. 289-303.

Procedimiento Civil, 32 LPRA Ap. V, R. 39.2 (C).[30] Sin embargo, el Foro Apelado decidió reservar su fallo hasta tanto culminara el desfile de prueba.[31] Además, le solicitó a ambas parte que, posterior a la culminación del juicio en su fondo, tanto la Autoridad de Puertos, como Ivyport, presentaran sus escritos respecto a la solicitud de desestimación.[32] Luego de celebrado el juicio, la apelada presentó el memorando en apoyo para la desestimación del caso de marras, el día 30 de noviembre de 2023.[33]

Posteriormente, el 24 de abril de 2024 el TPI-Carolina notificó la *"Sentencia"* que hoy nos ocupa.[34] En la misma, el Foro Apelado desestimó la demanda de los apelantes con perjuicio, impuso costas a estos y $10,000.00 en honorarios de abogado.

El 3 de mayo de 2024, los apelados radicaron un *"Memorándum de Costas"* ante el TPI-Carolina, en el que reclamaron la cantidad de $61,189.71.[35]

Por su parte, los apelantes presentaron una *"Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales"*.[36] Luego de varias mociones de oposición, réplicas y súplicas, el Foro Primario declaró "Sin Lugar" la reconsideración solicitada.[37]

Inconforme, Ivyport recurrió ante nos mediante un recurso de *"Apelación"* el 29 de julio de 2024. En el mismo, señaló los siguientes errores:

> **PRIMER ERROR:** COMETIÓ ERROR MANIFIESTO DE DERECHO EL TPI EN LA APLICACIÓN DE PRUEBA ADVERSA DE LA REGLA 304 DE LAS DE EVIDENCIA; EN

---

[30] Apéndice del escrito en oposición, pág. 782. Esta moción es comúnmente conocida como *"Non Suit"*, y se presenta cuando la parte demandada entiende que los hechos hasta ese momento establecidos por la parte demandante no justifican la concesión de un remedio.
[31] *Id.,* pág. 808.
[32] *Id.*
[33] Apéndice del recurso, pág. 1458.
[34] *Id.,* pág. 1496.
[35] *Id.,* pág. 1547.
[36] *Id.,* pág. 1645.
[37] *Id.,* pág. 1709.

LA EXCLUSIÓN DE EVIDENCIA ADMISIBLE; ASÍ COMO EN LA APLICACIÓN DE LAS REGLAS 39.2 Y 10.2(5) DE LAS DE PROCEDIMIENTO CIVIL.

**SEGUNDO ERROR:** ABUSÓ DE SU DISCRECIÓN EL TPI EN LA IMPOSICIÓN DE $10,000 POR HONRARIOS DE ABOGADOS POR LA SUPUESTA "RADICACIÓN DE UN PLEITO INMERITORIO"; Y LA IMPOSICIÓN DE COSTAS ASCENDENTES A $57,593.19.

**TERCER ERROR:** ERRÓ EL TPI AL SUPUESTAMENTE TOMAR CONOCIMIENTO JUDICIAL DE VARIOS EXPEDIENTES JUDICIALES INCLUYENDO EL INJUNCTION DE IVYPORT CONTRA LA AP QUE FUE CONCEDIDO Y EL COBRO DE DINERO DE LA AP CONTRA IVYPORT QUE FUE DESESTIMADO, PERO NO SOPESARLOS JUNTO AL RESTO DE LA EVIDENCIA.

**CUARTO ERROR:** ERRÓ EL TPI EN SU APRECIACIÓN DE LA PRUEBA DOCUMENTAL Y TESTIMONIAL AL CONCLUIR QUE IVYPORT NO TENÍA CONTRATO CON LA AP, QUE INCUMPLIÓ LOS PAGOS DE UNA SUPUESTA DEUDA, QUE CONDUCÍA SUS OPERACIONES DESORGANIZADAMENTE TODO LO CUAL LO LLEVÓ A RESOLVER ERRADAMENTE QUE NO SE DEMOSTRÓ QUE LA NEGLIGENCIA DE LA AP FUERA LA CAUSA DE LOS DAÑOS DE IVYPORT.

**QUINTO ERROR:** ERRÓ EL TPI EN SU APRECIACIÓN DE LA PRUEBA PERICIAL, INCLUYENDO EL HABER DESCARTADO EL INFORME PERICIAL DEL CPA JOAQUÍN TORRES DE 15 DE MARZO DE 2010 POR LO EXPUESTO EN EL INFORME SUPLEMENTARIO RENDIDO EL 30 DE ABRIL DE 2013, SIN CONSIDERAR QUE ESE SUPLEMENTO SE REDUJO A ESCRITO SOLAMENTE A PEDIDO DE LOS ABOGADOS DE LA AP DURANTE LA DEPOSICIÓN DEL CPA JOAQUÍN TORRES.

Como parte de su recurso, la apelante incluyó copia de la Transcripción de la Prueba Oral, por lo que ordenamos a la parte apelada a informar si estipulaba la misma. El 3 de septiembre de 2024, la Autoridad de Puertos, mediante *"Moción en Cumplimiento"* informaron que aceptaban la transcripción sometida por Ivyport. Además, ese mismo día, Ivyport presentó su *"Alegato Suplementario de la Parte Apelante"*.

Sin embargo, mediante *"Resolución"* del 3 de octubre de 2024, informamos que, posterior al análisis del expediente, consideramos ilegible las copias de la transcripción de la prueba oral. Por ello, ordenamos a la apelante a someter la misma nuevamente, conforme a las exigencias reglamentarias del Reglamento del Tribunal de Apelaciones. El 8 de octubre de 2024, este Tribunal recibió la copia de la transcripción de la prueba oral, según lo ordenado. Ese mismo día, Ivyport sometió nuevamente su alegato suplementario, atemperado a la nueva transcripción de la prueba oral. Finalmente, el 15 de octubre de 2024, la Autoridad de Puertos presentó su *"Alegato en Oposición a Apelación"*.

Perfeccionado el recurso ante nuestra consideración, procedemos a resolver.

**II.**

**A. Apelación**

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán et al. v. SLG Moret-Brunet,* 202 DPR 1062, 1070-1071 (2019); Véase, además, *Freire Ruiz de Val v.*

*Morales Román,* 2024 TSPR 129, 214 DPR ___ (2024). Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles,* 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

**B. Deferencia Judicial y Apreciación de la Prueba**

Es bien sabido que el Foro Primario es el que tiene la oportunidad de ver y observar a los testigos y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, ademanes, dudas y vacilaciones, e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117,127 (2019); *Pueblo v. Torres Martínez,* 200 DPR 834, 857-858 (2018); *López v. Dr. Cañizares,* 163 DPR 119, 136

(2004); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 746 (2012)*; Argüello v. Argüello,* 155 DPR 62 (2001). Consecuentemente, *los tribunales apelativos no debemos intervenir con la apreciación de la prueba que realizan los tribunales de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.  Barreto Nieves, et al. v. East Coast,* 2024 TSPR 40, 213 DPR ____ (2024); *Torres González v.  Zaragoza Meléndez,* 211 DPR 821, 846 (2023); *Super Asphalt Pavement Corp. v. AFI y otros,* 206 DPR 803, 820 (2021)*; Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 784 (2020); *Pueblo v. Viruet Camacho,* 173 DPR 563, 584 (2008). *S.L.G. Rodríguez v. Nationwide,* 156 DPR 614, 623 (2002).

El fundamento principal a esta deferencia es que el juzgador del Foro Primario tuvo la oportunidad de observar toda la prueba presentada, y por ende se encuentra en mejor situación que el Tribunal Apelativo para considerarla. *Pueblo v. González Rivera,* 207 DPR 846, 848 (2021); *Argüello v. Argüello,* supra, en la pág. 78.

De esta manera, *"la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". Barreto Nieves et al. v. East Coast,* supra; *Pueblo v. Hernández Doble,* 210 DPR 850, 865 (2022); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779-780 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 793 (2020) (Énfasis suplido). *"Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida,* no exista base suficiente que apoye su determinación". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 220 (2021). (Énfasis suplido).

Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan

acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. Se exceptúan de la regla de deferencia, las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011). La apreciación de la prueba realizada por el TPI debe ser objeto de deferencia por los tribunales apelativos. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *McConnell v. Palau*, 161 DPR 734, 750 (2004). Como regla general, no se intervendrá con la apreciación de la prueba, las determinaciones de hechos y las adjudicaciones de credibilidad que haga el foro de instancia. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 78-79 (2009); *Trinidad v. Chade*, 153 DPR 280, 292 (2001).

No obstante, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Méndez v. Morales*, 142 DPR 26, 36 (1996). Si un análisis integral de la prueba refleja que las conclusiones del tribunal *a quo* están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, éste ha cometido un error manifiesto. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ramírez Ferrer v. Conagra Foods P.R.*, 175 DPR 799, 811 (2009).

De otro lado, es principio establecido que un tribunal apelativo está en la misma posición que el Foro Primario en cuanto a la apreciación de prueba documental o pericial. *Castrillo v. Maldonado*, 95 DPR 885, 889 (1968). Por tanto, corresponde a la parte que impugna el peso de probar que el dictamen fue arbitrario, irrazonable o que se tomó en ausencia de evidencia sustancial, todo

lo cual implicaría error manifiesto. *Gallardo v. Petiton y V.T.N., Inc.,* 132 DPR 39, 56 (1992); *Henríquez v. C.E.S.,* 120 DPR 194, 210 (1987); *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987); *Quintana Tirado v. Longoria,* 112 DPR 276, 292 (1982).

En consecuencia, la intervención de un foro apelativo con la evaluación de la prueba testifical únicamente procede en casos en que un análisis integral de dicha prueba pueda causar en el ánimo del foro apelativo una insatisfacción o intranquilidad de conciencia tal que estremezca el sentido básico de justicia. *Pueblo v. Cabán Torre*s, 117 DPR 645, 654 (1986). Los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que "del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Maryland Casualty Co. v. Quick Const. Corp.,* 90 DPR 329, 336 (1964).

Por otro lado, el Tribunal Supremo de Puerto Rico ha enfatizado que cuando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad que le mereció ***"es imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba".*** *Pueblo v. Pérez Delgado,* 211 DPR 654, 674 (2023); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 129 (2019). (Énfasis suplido).

Cónsono con los pronunciamientos del Máximo Foro de Puerto Rico se ha establecido que:

> "[e]n consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al

foro revisor en tiempo y espacio de lo ocurrido en el Foro Primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: *(1) transcripción de la prueba,* (2) exposición estipulada o (3) exposición narrativa".

*Pueblo v. Pérez Delgado*, supra, pág. 671.
(Énfasis nuestro).

Así pues, sentencia nuestro más Alto Foro que: "ante la presunción de corrección que revisten las determinaciones del Foro Primario, quien desee impugnar las mismas deberá colocar al tribunal revisor en posición de atender correctamente sus planteamientos sobre la apreciación y la credibilidad de la prueba oral desfilada". Íd. en la pág. 11.

### C. Contratos gubernamentales

Los contratos gubernamentales están revestidos del más alto interés público. *Mun. Aguada v. Construction, LLC*, 2024 TSPR 69, 213 DPR ___ (2024); *St. James Security v. A.E.E.*, 2023 TSPR 149, 213 DPR ___(2023); *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 794 (2023). Tan así, que nuestra Carta Magna contiene una disposición que establece el principio de que "sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado y en todo caso por autoridad de ley". Artículo VI, Sección 9, Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA.

El interés del Estado va dirigido "a evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento." *Vicar Builders v. ELA*, 192 DPR 256, 263 (2015); *Alco Corp. v. Mun. de Toa Alta*, 183 DPR 530, 536–537 (2011); *Hatton v. Mun. de Ponce*, 134 DPR 1001, 1005, (1994).

De igual forma, existe una normativa de naturaleza restrictiva, en cuanto a la contratación gubernamental con entes

privados, la cual ha sido reiterada consistentemente por nuestro Tribunal Supremo. A esos fines, los contratos entre el Estado y una parte privada tienen que cumplir con determinados requisitos, a saber: 1) se reduzcan a escrito; 2) se mantenga un registro fiel con miras a establecer su existencia *prima facie*; 3) se remita copia a la Oficina del Contralor como medio de una doble constancia de su otorgamiento, términos y existencia; y 4) se acredite la certeza de tiempo, es decir, haber sido realizados y otorgados quince (15) días antes. Ley para Establecer Parámetros Uniformes en los Procesos de Contratación de Servicios Profesionales y Consultivos para las Agencias y Entidades Gubernamentales del ELA, en adelante, Ley para Establecer Parámetros Uniformes, Ley Núm. 237-2004, 3 LPRA sec. 8613(b). *Mun. Aguada v. Construction, LLC,* supra; *SLG Ortiz-Mateo v. ELA,* supra; *Genesis Security v. Dpto. Trabajo,* 204 DPR 986, 998 (2020); *ALCO Corp. v. Mun. Toa Alta,* 183 DPR 530, 537 (2011); *CMI Hospital v. Depto. Salud,* 171 DPR 313, 320 (2007); *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988).

La Ley para Establecer Parámetros Uniformes, en su Artículo 5, dispone que "[t]oda entidad gubernamental velará que al otorgar un contrato se cumpla con las leyes especiales y reglamentación que apliquen según el tipo de servicios a contratarse". Ley para Establecer Parámetros Uniformes, supra, 3 LPRA sec. 8611. Los contratos privados, y aquellos que envuelven entidades públicas son regulados con distinción en nuestro ordenamiento jurídico; esta es una realidad ineludible. A estos efectos, el Tribunal Supremo hizo las siguientes expresiones:

> Es por eso que hemos reiterado la rigurosidad de las disposiciones de ley que rigen la contratación gubernamental, asunto que está revestido del más alto interés público. La validez de este tipo de contrato se determina a base de estatutos especiales que lo regulan y no a base de las teorías generales de contratos.
> *Vicar Builders v. ELA*, supra, págs. 262-263.

Además, en lo referente al contrato gubernamental, sus enmiendas o extensiones, las mismas deben constar *por escrito*. El requisito de que los contratos de esta naturaleza obren por escrito "se ha convertido en uno de carácter formal y sustantivo, cuyo propósito principal es evitar el desembolso ilegal de fondos gubernamentales, fomentar la transparencia en la gestión pública." Rocío de Félix Dávila, *El Estado como contratante: Hacia un nuevo modelo de contratación gubernamental,* 84 Rev. Jur. U.P.R. 1137, 1141 (2015).

De igual forma, los contratos gubernamentales tienen que ser presentados a la Oficina del Contralor para su registro oficial. Así lo establece la Ley de Registros de Contratos, en su Artículo 1, al precisar lo siguiente:

> (a) Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o la enmienda.
> Ley Núm. 18 de 30 de octubre de 1975, 2 LPRA sec. 97.

Sobre el referido articulado, el Tribunal Supremo señaló que es evidente la intención del legislador de crear mediante esta pieza legislativa un mecanismo de cotejo y publicidad de los contratos gubernamentales. *Rodríguez Ramos v. ELA,* 190 DPR 448, 462 (2014).

### D. Presunción adversa

La presunción de prueba adversa voluntariamente suprimida está consignada en la Regla 304(5) de las de Evidencia, 32 LPRA Ap. VI, R. 304(5).[38] Entre las presunciones controvertibles, establece la

---

[38] La Regla 304 corresponde a la Regla 16 de las Reglas de Evidencia derogadas, de 1979, y el inciso 5 de la Regla 304 corresponde al mismo inciso de la anterior Regla 16 de Evidencia, 32 L.P.R.A. Ap. IV, R. 16(5).

precitada Regla que "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". Esta presunción tiene como propósito ayudar en el proceso de aquilatar la prueba, estableciendo una penalidad a la parte proponente cuando ofrece evidencia de menos valor probatorio o cuando suprime alguna voluntariamente. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. SITUM, Inc., 2015, pág. 171; *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 512 (1989). Entre las ocasiones en que aplica esta presunción, está cuando no se somete en evidencia toda la prueba anunciada. *Íd.*, op. cit. pág. 172. Explica Rolando Emmanuelli que, "Se estima que las partes presentarán toda la prueba que les sea favorable por consideraciones de lógica y conveniencia". No obstante, cuando la parte promovente ofrece evidencia de menor valor probatorio o cuando suprime alguna voluntariamente "[s]e piensa que la motivación para ello es que la prueba no le es favorable". *Íd.*, op. cit. pág. 171.

Respecto a las presunciones en los casos civiles, la Regla 302 de las de Evidencia, dispone:

> **Efecto de las presunciones en casos civiles**
> En una acción civil, una presunción impone a la parte contra la cual se establece la presunción[,] el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la inexistencia del hecho presumido, la juzgadora o el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la inexistencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir a quien juzga de que es más probable la inexistencia que la existencia del hecho presumido.
> Regla 302 de las Reglas de Evidencia, supra.

**E. Honorarios**

La conducta que amerita la imposición de honorarios de abogado por temeridad es cualquiera que haga necesario un pleito

que se pudo evitar o que ocasione gestiones evitables. El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir las molestias, gastos, trabajos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 546 (2010); *Blas v. Hosp. Guadalupe,* 146 DPR 267, 334-335 (1998); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

Algunas instancias en las cuales el Tribunal Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

> (1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,
> (2) se defiende injustificadamente de la acción,
> (3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida,
> (4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y
> (5) niega un hecho que le consta es cierto a quien hace la alegación.
> *SLG González-Figueroa v. SLG et al.*, supra, pág. 150; *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011) citando a *Fernández v. San Juan Cement Co., Inc.*, supra, pág. 719; *Blas v. Hosp. Guadalupe*, supra, págs. 335-336.

Una vez un tribunal con competencia determina que se ha incurrido en temeridad, está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de honorarios de abogado. *Torres Montalvo v. Gobernador ELA,* 194

DPR 760, 778 (2016). Al respecto, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), dispone como sigue:

> [...]
>
> (d) Honorarios de Abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.
>
> *SLG González-Figueroa v. SLG et al.*, supra, pág. 145.

El antedicho estatuto preceptúa en nuestro esquema procesal la intención de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Torres Montalvo v. Gobernador ELA*, supra, pág. 778. De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa.

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, supra, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Así, el juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Por tanto, la determinación que en su día emita, ***solo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio***. *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188

(2008); *Blás v. Hosp. La Guadalupe,* supra, pág. 334; *Fernández v. San Juan Cement Co.*, supra, pág. 722. En dicho contexto, la doctrina vigente reconoce que un tribunal incurre *"en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable"*. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

Es por ello que "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y ***solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad***". *SLG González-Figueroa v. SLG et al.*, supra, pág. 150 (2022); *Maderas Tratadas v. Sun Alliance et al,* 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008). (Énfasis nuestro).

Finalmente, resaltamos que nuestra Alta Curia ha establecido que la imposición de honorarios por razón de temeridad no será apropiada "cuando existe alguna desavenencia honesta en cuanto a cuál de las partes beneficia el derecho aplicable". *Maderas Tratadas v. Sun Alliance et al.,* supra, pág. 926.

### III.

Ivyport recurre ante esta Curia haciendo varios señalamientos de error. En esencia, impugna la determinación del TPI-Carolina de desestimar su demanda contra la Autoridad de Puertos, mediante su *"Sentencia"* del 23 de abril de 2024.

En su *primer señalamiento de error,* la apelante arguye que el Foro Primario se equivocó al aplicar la presunción adversa de la Regla 304 de Evidencia, supra, a identificaciones de evidencia presentadas por ella, y no utilizadas en el juicio. *No le asiste razón.*

Ivyport razona que la presunción adversa pudo "haber tenido un efecto en la imposición del pago de $10,000.00 de honorarios abogado". Sin embargo, no coloca en posición a este Tribunal para evaluar los fundamentos de su sospecha. Y es que lo planteado no es más que una presunción de su parte, infundada y a la cual no podemos en derecho otorgar crédito sin más.

Como explicáramos previamente, la Regla 304 (5) de Evidencia, supra, establece que la evidencia que está anunciada, pero no se ofrece en el juicio, podrá presumirse adversa a la parte que la anunció. *Lo cierto es que estos elementos se cumplen.* Incluso, en su recurso, Ivyport admite que, por entenderla acumulativa, no presentó en el juicio ciertos documentos anunciados como evidencia. Sin embargo, la apelante no nos coloca en posición para evaluar el presunto elemento acumulativo de la prueba que suprimió. Por ello, esta Curia opta por darle deferencia a la evaluación hecha por el Foro Apelado sobre los procesos de evaluación y valoración de la prueba.

Por último, hacemos eco de las expresiones del Foro Apelado, en su exposición del derecho relevante a este error:[39]

> En realidad, la presunción de la Regla 304 (5) solo cobra vigencia si las partes ofrecen o anuncian una evidencia dada y luego no la presentan. En *Banco Popular de Puerto Rico v. Norma M. Meléndez Nuñez*, KLCE202000736 (2021) se dispuso que 'De cualquier manera, si aplicara la presunción sobre una pieza de evidencia dada, ello se sopesaría con el resto de la evidencia que se presente para hacer las determinaciones correspondientes. De por sí, esta no es una base para desestimar una acción'.

Por esto último, nos parece claro que el TPI-Carolina, aunque aplicó la presunción de adversidad, lo hizo a la luz de toda la evidencia. Es decir, no fue lo único que tomó en consideración para decidir si declaraba con lugar o no la demanda.

---

[39] Apéndice del recurso, pág. 1528.

Añade en este error la apelante que el Foro Primario incidió en su desestimación al amparo de la Regla 39.2 y 10.2 (5) de Procedimiento Civil, supra. Este señalamiento *no solo es improcedente, sino altamente frívolo.* Además, se equivoca el apelante de su faz. Lo cierto es que el Foro Apelado no desestimó la demanda a la luz de las provisiones procesales antes mencionadas.

Por otro lado, luego de que Ivyport sometiera su caso, la representación legal de la apelada argumentó ante el TPI-Carolina una moción de desestimación *(non-suit).* El Foro Primario no solo se reservó el fallo, sino que ordenó a las partes a expresarse en un término específico sobre esta solicitud luego del juicio. La Autoridad de Puertos así lo hizo, presentando una moción reiterando su solicitud de desestimación. Sin embargo, no surge del expediente que obra en autos que Ivyport haya hecho lo propio. Además, en su escrito apelativo, el apelante se limita a señalar que el Foro Apelado no podía desestimar la demanda al amparo de estas Reglas, en un escueto párrafo, en el que erróneamente indicó que por si el Foro Primario así deseaba desestimar, tenía que hacerlo previo a la culminación de la celebración del juicio en su fondo. Este señalamiento *está incorrecto en derecho.* El Foro Primario puede reservarse el fallo de una moción como esta, hasta tanto se celebre el juicio en su totalidad, si tiene dudas al respecto. *Rivera Figueroa v. The Fuller Brush Co.,* supra, pág. 916; *Roselló Cruz v. García,* 116 D.P.R. 511, 520 (1985).

En su *segundo señalamiento de error,* Ivyport plantea que fue un error la imposición de $10,000.00 en honorarios de abogado y $57,593.19 en concepto de costas. *No le asiste razón.*

Entendemos que en el caso de marras, se desprende que los apelantes tenían conocimiento de la ausencia de méritos en su demanda. En esencia, estos alegaron que el día en que la Autoridad de Puertos realizó un embargo de facto en sus facilidades, Ivyport

sufrió daños económicos de los cuales no pudo recuperarse. Sin embargo, surge de la prueba documental que cuando la apelante adquirió su compañía de Swissport, lo hacía con un déficit económico que empeoró. Es decir, alegar que el cierre de veinticuatro (24) horas de sus facilidades fue fulminante para Ivyport, niega la extensa documentación desfilada, aquilatada y creída por el Foro Sentenciador, sobre la situación económica precaria que ya venía sufriendo Ivyport.

Con relación a las costas, la Autoridad de Puertos sometió un memorando de costas claro y detallado, que recopiló los esfuerzos legales de su representación legal desde el año 2008.

Por estar entrelazados entre sí, discutiremos el *tercer y cuarto señalamiento de error*. En síntesis, plantea Ivyport que el Foro Primario se equivocó en su apreciación de la prueba documental y testimonial, y concluir que Ivyport no tenía contrato con la Autoridad de Puertos, que incumplió con los pagos de su deuda, operaba de manera desorganizada y que el cierre de sus operaciones no se debió a las actuaciones del apelado. *No le asiste razón.*

Como explicáramos previamente, los contratos entre agencias o entidades del Estado, y partes privadas, contrario a los contratos privados, tienen requisitos de forma. La normativa expone que estos tienen que darse por escrito, debe haber una copia del mismo en la Oficina del Contralor, entre otros requisitos. Sin embargo, de la prueba desfilada y aquilatada por el Foro Apelado durante el juicio, no surge prueba de que entre las partes haya existido un contrato que cumpla con estas características. Esto último, en consideración que la Autoridad de Puertos es una Instrumentalidad Pública, y Ivyport una compañía privada. Por ello, no se equivocó el TPI-Carolina al determinar que entre las partes nunca existió un contrato. Máxime cuando sí surge de la prueba documental que Swissport, la entidad que adquirió Ivyport, sí tenía un contrato con

la Autoridad de Puertos que caducó y nunca fue renovado por la apelante y el apelado.

Por otro lado, justipreciamos que los señalamientos de Ivyport, con relación a la apreciación de la prueba son, de igual forma, *temerarios*. Ivyport insistió durante este litigio, y aun hoy intenta persuadirnos de ello, que el cierre de sus operaciones se debió al cierre de un día que la Autoridad de Puertos forzó el 31 de julio de 2008. Sin embargo, hay vasta prueba documental y testimonial que apoya las conclusiones del Foro Primario, con relación a la deuda que Ivyport asumió de Swissport, ascendente a diez (10) millones de dólares en el año 2002. Es decir, no es un argumento de buena fe señalar culpa al embargo de facto provocado por el apelado, cuando desde sus comienzos, la apelante operó en un déficit del cual nunca se recuperó.

En su *quinto señalamiento de error*, la apelante arguye que fue un error del TPI-Carolina descartar el testimonio pericial del CPA Torres. *No le asiste razón.*

En su *"Sentencia"*, el Foro Primario hizo una sólida explicación sobre su proceso analítico entre los peritos que testificaron. Como expusimos previamente, el Tribunal Revisor, en cuyas funciones nos movemos, ostenta las mismas facultades para revisar la prueba pericial desfilada en el juicio. Luego de evaluar los informes periciales, tanto del CPA Torres, como del Licenciado Quiñones (perito del apelado), y la transcripción del testimonio de ambos, esta Curia *concurre con las determinaciones del TPI-Carolina.*

Lo cierto es que el CPA Torres, a nuestro juicio, testificó dos cosas que ameritaban el descarte de su testimonio. Primero, admitió que dio por bueno y exacto la información sobre valorización ofrecida por la misma parte apelante. Esto crea serias dudas sobre la credibilidad de su testimonio. Además, no pudo explicar de qué manera el embargo de facto sufrido por Ivyport fue la causa directa

del cierre de sus operaciones, y no el déficit económico que sufrió por años.

## IV.

Por los fundamentos anteriormente expuestos, *confirmamos el dictamen apelado en su totalidad.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


                          Lcda. Lilia M. Oquendo Solís
                       Secretaria del Tribunal de Apelaciones